UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITY OF MAPLEWOOD, MISSOURI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:11CV564 RWS |
| | ) |
| NORTHLAND CASUALTY CO., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Ellen Wallingsford, a police sergeant for the City of Maplewood, filed an employment discrimination charge in 2003 arising out of her alleged suspension. In 2004, Wallingsford sued Maplewood for gender discrimination based upon her suspension and other alleged discriminatory conduct. That lawsuit was dismissed on January 12, 2004. After she resigned, Wallingsford brought another lawsuit in 2006 against Maplewood in state court for constructive discharge, wrongful discharge, and retaliation. That case is still pending. During the relevant time periods, Maplewood had insurance coverage for employment discrimination claims from three different carriers, Northland, Columbia, and Illinois Union. All of these insurance policies are claims made or claims made and reported policies. When Maplewood notified the carriers of Wallingford's claims, all three insurance companies refused coverage. So, Maplewood filed the instant suit for breach of insurance contract against the carriers in state court. Defendants removed the case to this Court, citing diversity jurisdiction. See 28 U.S.C. § 1332. All defendants now move for summary judgment, arguing that Maplewood is not entitled to coverage as a matter of law. I find that Northland and Illinois Union are entitled to judgment as a matter of law. Because it appears that Columbia has failed to address a key argument in its summary

judgment motion, I will order additional briefing on its motion before I issue my ruling. My analysis follows.

## Standards Governing Summary Judgment

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Fed.R.Civ.P. 56(c)(2)). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." Id. (internal quotation marks and citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000), (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted) .

"State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship." Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d 857, 861 (8th Cir. 2012).  The parties agree that Missouri law governs all insurance contracts at issue in this case.  Under Missouri law, the interpretation of the meaning of an insurance policy is a question of law.  Capitol Indem. Corp. v. 1405 Associates, Inc., 340 F.3d 547, 547 (8th Cir. 2003).  The general rules for interpretation of contracts apply to insurance policies.  Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 301–02 (Mo. 1993) (en banc).  "Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written." Krombach v. Mayflower Ins. Co., Ltd., 827 S.W.2d 208, 210 (Mo. 1 992) (en banc) (citations omitted).  See also Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 209 (Mo. Ct. App. 1995) ("In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties.").  An interpretation of insurance policy language which may render a portion of the policy illusory "should not be indulged in." Cano v. Travelers Ins. Co., 656 S.W.2d 266, 271 (Mo. 1983) (en banc).

"If the language is ambiguous, it will be construed against the insurer." Peters, 853 S.W.2d at 302 (internal citations omitted).  "Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage." Nixon v. Life Investors Ins. Co. of America, 675 S.W.2d 676, 679 (Mo. Ct. App. 1984).  "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." Peters, 853 S.W.2d at 302.  Insurance policy language is ambiguous when it is

reasonably open to different constructions.  Lincoln County Ambulance Dist. v. Pacific Employers Ins. Co., 15 S.W.3d 739, 743 (Mo. Ct. App. 1998).  To test whether the language used in the policy is ambiguous, the language is considered in the light in which it would normally be understood by the lay person who bought and paid for the policy.  Kellar v. American Family Mut. Ins. Co., 987 S.W.2d 452, 455 (Mo. Ct. App. 1999).  If an insurance "contract promises something at one point and takes it away at another there is an ambiguity."  Behr v. Blue Cross Hosp. Service, Inc., of Mo., 715 S.W.2d 251, 256 (Mo. 1986) (en banc).

"Exceptions and limitations contained in insurance policies should be construed strictly against the insurer."  Standard Artificial Limb, 895 S.W.2d at 209.  When an insurance company seeks to escape coverage based on a policy exclusion, the burden is on the insurer to establish that the exclusion is applicable.  American Family Mut. Ins. Co. v. Bramlett ex rel. Bramlett, 31 S.W.3d 1, 4 (Mo. Ct. App. 2000).  "Unless an insurance contract is so clear in its meaning that as a matter of law it precludes a plaintiff's recovery, a motion for summary judgment based on the contract should be denied."  Northland Ins. Cos. v. Russo, 929 S.W.2d 930, 934 (Mo. Ct. App. 1996).  Under these standards I review the facts and insurance policies at issue in this case.

## Background Facts

Wallingsford was hired by the Maplewood police department in 1986.  In March of 2003, Wallingsford sent a rambling letter to the Maplewood City Manager complaining of "work place harassment."[1]  On April 11, 2003, Wallingsford filed a Charge of Discrimination against the City

---

[1] This letter is attached as Exhibit 2 to Columbia Casualty's statement of material facts in support of summary judgment [#53-2].  However, the copy of this letter provided to the Court is missing a page.  Therefore, the defendant should move to substitute a complete copy of this exhibit by the same date that it submits its supplemental memorandum in support of summary judgment.

- 4 -

of Maplewood with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission.  The 2003 Charge alleged that police chief James White informed Wallingsford on December 18, 2002 that she was being suspended for failing to write up another officer for taking evidence for personal use.  In the Charge, Wallingsford alleged that she believed that she was actually suspended due to her gender and had therefore been subject to sex discrimination.  The EEOC issued a Notice of Charge to the City on April 17, 2003, providing the City with Wallingford's Charge of Discrimination.  On August 27, 2003, the MCHR issued a "no probable cause" determination to Wallingsford, and on October 15, 2003, the EEOC issued her a right to sue letter.  On January 12, 2004, Wallingsford filed a lawsuit against the City in this Court.  The 2004 suit, styled <u>Wallingsford v. City of Maplewood</u>, Case Number 4:04CV41, was assigned to United States Magistrate Judge Thomas C. Mummert, III.  On February 2, 2004, the City moved to strike some of Wallingsford's allegations for failure to exhaust administrative remedies.  Wallingford's 2004 complaint included allegations that she was subjected to voice stress analyzer tests, poor employee evaluations, complaints of gender harassment by male officers when she wrote up these officers, being yelled at and treated abusively by male officers and supervisors, having her evaluation scores lowered if she complained, being passed over promotions, internal investigations without justification, being falsely accused of driving a police car while intoxicated and of removing evidence, being "intensively" watched, and being subjected to "other repeated and continuing behavior" by her supervisors because of her sex that makes it difficult to do her job.  Judge Mummert concluded that Wallingsford's 2003 Charge of Discrimination properly encompassed only her suspension and dismissed these allegations for failure to exhaust administrative remedies on May 12, 2004.  A few months later, Wallingsford

filed a joint stipulation for voluntary dismissal without prejudice, and the 2004 lawsuit was dismissed on November 1, 2004. Wallingsford remained employed by Maplewood until she resigned, effective August 29, 2004.

Wallingsford filled out an EEOC Questionnaire on January 20, 2005 complaining of sex discrimination and retaliation by the City. Apparently, Wallingsford also filed a Charge of Discrimination, because the MCHR issued her a right to sue letter for the 2005 Charge on January 19, 2006. A copy of Wallingsford's 2005 EEOC Charge has not been provided to the Court. The City contends that it was never notified of Wallingsford's 2005 Charge and had no knowledge of the administrative proceedings until December of 2005, when it received a copy of the Dismissal and Notice of Rights sent to Wallingsford by the EEOC. Apparently, the City's copy of this letter included portions of Wallingsford's EEOC Questionnaire, but not the Charge of Discrimination. The City received a copy of Wallingsford's right to sue letter from the MCHR, but that does not indicate the nature of her claims. Wallingsford filed a second lawsuit against the City in the Circuit Court of St. Louis County on March 29, 2006. Wallingsford's state-court petition included some of the claims asserted against the City in her prior 2004 lawsuit. However, Wallingsford also brought claims for constructive discharge, retaliation and intentional infliction of severe emotional distress. Wallingsford filed a first amended petition on March 30, 2007. On December 23, 2011, the state court granted summary judgment to the City on Count I of the first amended petition and denied summary judgment on all other counts. Count I of the first amended petition alleges gender discrimination arising out of Wallingsford's

suspension.² No Memorandum and Order explaining the basis for the state court's decision was provided to the Court. The 2006 state court case is apparently still pending.³

Discussion

A. Northland Policy

Northland issued Public Officials Liability Coverage Policy No. AY070042 to Maplewood as a participating member of the St. Louis Area Insurance Trust. The policy had a policy period from July 1, 2002 to July 1, 2003, with a reporting period for claims arising from "wrongful acts" occurring in the policy period ended July 1, 2004. The first page of the policy states that it provides claims-made coverage. According to the terms of the policy, Northland "will pay those sums that the insured becomes legally obligated to pay as damages because of a 'wrongful act' arising out of the discharge of duties by or on behalf of the public entity names in the Declarations provided always that: (a) The 'claim,' on account of such 'wrongful act,' is first made against the insured and reported to us, in compliance with Section VII - Conditions - Item A, during the policy period or any applicable reporting period under Section VI - Reporting Periods." The policy defines "claim" as:

> 1. A written demand for damages or a notice advising an insured of an intent to sue;
>
> 2. A charge or a notice of investigation or violation from any government agency;
> . . . or

---

²Count II contains the allegations that were struck from Wallingsford's 2004 case, and Counts III and IV also include allegations based on alleged wrongful acts, such as constructive discharge, that occurred after the filing of the 2004 suit.

³Although the parties notified the Court that the state court action was scheduled for trial on April 30, 2012, they did not advise the Court whether the case actually went to trial.

> 4. A civil proceeding commenced by the service of a summons, complaint or similar pleading; received by an insured alleging a 'wrongful act.'

The policy goes on to define "wrongful act" as "an act, error, or omission or negligent act," including "wrongful employment practices." The policy defines "wrongful employment practice(s)" as follows:

> 1. Employment discrimination in connection with hiring, promotion, advance or opportunity, demotion, discipline, pay, layoff or termination including breach of any oral or written or implied employment contract on the basis of . . . sex . . ., or any conduct that violates any federal, state or local law prohibiting employment discrimination . . .
>
> 3. Any of the following employment-related acts: . . . retaliation, . . . wrongful discipline, negligent evaluation . . . .

The policy further provides that "all claims of all persons or entities arising out of the same 'wrongful employment practice' or a series of causally and related 'wrongful employment practice(s)' shall be treated as a single 'claim' and shall be deemed to have been made at the time the first of those claims is made against any insured.

The policy also requires the City to provide Northland with written notice of any "claim" or "suit." Maplewood first reported a claim involving Wallingsford to Northland in 2006, when it forwarded Wallingsford's 2006 state court lawsuit.

Northland contends that it is entitled to summary judgment because the City failed to provide notice of any claim until 2006, two years after the policy reporting period expired. There is no dispute here that Northland's insurance policy is a "claims made" policy – the first page states in bold typeface print: "NOTICE: THIS COVERAGE FORM PROVIDES CLAIMS-MADE COVERAGE." Under Missouri law "a claims made policy provides coverage when the act or omission is discovered and brought to the attention of the insurer, regardless of when the

- 8 -

act or omission occurred." Wittner, Poger, Rosenblum & Spewak, P.C. v. Bar Plan Mut. Ins. Co., 969 S.W.2d 749, 754 (Mo. 1998) (en banc) (internal quotation marks omitted); accord Lexington Ins. Co. v. St. Louis University, 88 F.3d 632, 634 (8th Cir. 1996). "Claims made policies place special reliance on notice." Landry v. Intermed Ins. Co., 292 S.W.3d 352, 356 (Mo. Ct. App. 2009); thus, with a claims made policy, "if there is no timely notice, there is no coverage." Lexington Ins., 88 F.3d at 634 (noting that Missouri cases emphasize the necessity of this timely notice).

The City does not – and indeed, cannot – dispute that Northland's policy is a claims made policy, that the reporting period expired in 2004, and that it did not notify Northland of Wallingsford's claim until 2006. Thus, there is no dispute that the City did not provide Northland with notice of its claim within the policy reporting period. Despite these undisputed facts, the City argues that Northland must first demonstrate prejudice from its failure to timely notify Northland of Wallingsford's claim before it is entitled to summary judgment. The City relies on the Missouri Supreme Court's decision in Weaver v. State Farm Mut. Auto Ins. Co., 936 S.W.2d 818 (Mo. 1997). As Northland points out in its reply, this reliance is misplaced because Weaver dealt with occurrence policies, not claims made policies.[4] The Missouri Supreme Court recognized the validity of the distinction between claims made and occurrence policies in Wittner (decided after Weaver) as follows:

> The prejudice requirement is generally not held to apply to claims made policies. This is because, unlike an occurrence policy in which coverage is triggered by the occurrence of a negligent act or omission during the coverage period, a claims

---

[4] "'Occurrence' policies generally provide for coverage for an event that occurs during the policy period, regardless of when a claim is asserted." H & R Block, Inc. v. Am. International Specialty Lines Ins. Co., 546 F.3d 937, 939 (8th Cir. 2008) (internal quotation marks omitted).

> made policy provides coverage when the act or omission is discovered and brought to the attention of the insurer, regardless or when the act or omission occurred. Because the reporting period helps define the scope of coverage under a claims made policy, to excuse a delay in notice beyond the policy period would alter a basic term of the insurance contract. We see no reason in the facts of this case to question this generally accepted principle of law, especially where there also appears ample evidence of prejudice.

969 S.W.2d at 754-755 (internal citations and quotation marks omitted). Courts have continued to follow Wittner and do not require a showing of prejudice for late claims under claims made policies. See, e.g., Landry, 292 S.W.3d at 356 ("If the insured does not give notice within the contractually required policy period, there is simply no coverage under a claims made policy, whether or not the insurer was prejudiced."); Lexington Ins. Co. v. Integrity Land Title Co., Inc., 2012 WL 458791, *11 -12  (E.D. Mo. Feb. 13, 2012); ACI/Boland, Inc. v. U.S. Specialty Ins. Co., 2009 WL 90131, *8 (E.D. Mo. Jan. 14, 2009). I decline the City's invitation to rewrite Missouri law and require Northland to demonstrate that it was prejudiced by the City's failure to provide timely notice under the claims made policy. Because the City did not provide notice of Wallingsford's claim within the reporting period of the claims made policy, Northland is entitled to summary judgment without a showing of prejudice. Northland's motion for summary judgment will be granted.

B. Illinois Union Policy

Illinois Union issued ACE Advantage Public Officials' Liability Policy No. EON N00573073 to Maplewood for the policy period of July 1, 2005 through July 1, 2006. The Policy states that it "covers only claims first made against the insureds and reported to the insurer during the policy period." The policy further states in relevant part as follows:

I. INSURING AGREEMENTS

* * *

> B. Employment Practices Liability
>
> If Insuring Agreement B, Employment Practices Liability, coverage is granted pursuant to Item 3 of the Declarations, the Insurer will pay Damages and Claims Expenses of the Insured for which the Insured becomes legally obligated to pay by reason of a Claim first made against the Insured and reported to the Insurer during the Policy Period, or if elected, the Extended Reporting Period, for any Wrongful Act taking place on or subsequent to the Retroactive Date specified in Item 9 of the Declarations and prior to the end of the Policy Period, if such Claim is brought and maintained by or on behalf of any past, present or prospective full-time, part-time, temporary or leased employee(s) of the Named Insured.

The policy defines "Claim" as follows:

> 2. a civil proceeding against any Insured seeking monetary damages or non-monetary damages or injunctive relief, commenced by the service of a complaint or similar pleading, . . .
>
> 5. a civil, administrative or regulatory proceeding against any Insured commenced by the filing of a notice of charges, investigative order or similar document; or
>
> 6. a civil, administrative or regulatory investigation against any Insured commenced by the service upon or other receipt by any Insured of a written notice or subpoena from the investigating authority identifying any Insured as an individual against whom a civil, administrative or regulatory investigation or proceeding may be commenced . . . .
>
> Section III of the policy excludes coverage for Damages of Claim Expenses on account of

any Claim:

> R. Alleging, based upon, arising out of or attributable to:
>
> 1. any prior or pending litigation or administrative or regulatory proceeding filed on or before the effective date of the first policy issued and continuously renewed by the Insurer, or the same or substantially the same Wrongful Act, fact, circumstance or situation underlying or alleged therein; or
>
> 2. any other Wrongful Act whenever occurring which, together with a Wrongful Act underlying or alleged in such prior or pending proceeding, would constitute Interrelated Wrongful Acts.
>
> * * *
>
> T. alleging, based upon, arising out of or attributable to any Wrongful Act prior to

>the inception date of the first policy issued by the Insurer or any affiliated thereof, and continuously renewed and maintained, if, on or before such date, any Insured knew or could have reasonably foreseen that such Wrongful Act could lead to a Claim.

The City first notified Illinois Union of its dispute with Wallingsford on April 13, 2006, by forwarding a copy of the 2006 lawsuit. In a letter dated June 9, 2006, Illinois Union denied coverage for the 2006 lawsuit.

Like the Northland policy, the Illinois Union policy is also a claims made policy. However unlike the Northland policy, here the City did provide notice of Wallingsford's 2006 lawsuit within the policy period. The City concedes that Wallingsford's 2003 charge of employment discrimination, her 2004 lawsuit, and Counts I and II of the 2006 lawsuit (which restated allegations from her 2004 lawsuit and were subsequently dismissed by the state court) are outside the scope of Illinois Union's policy. Therefore, the City only seeks coverage from Illinois Union for those claims of retaliation (which includes constructive discharge) and intentional infliction of emotional distress set out in the 2006 lawsuit.[5]

Despite the timely notice of claim, however, Illinois Union insists that it is not obligated to provide coverage for any of Wallingsford's claims because of the policy's prior knowledge and prior and pending exclusions. I agree that Illinois Union is entitled to summary judgment on

---

[5] Although the City contends that these claims are Counts III and IV of the amended petition, Count IV of the amended petition is actually a claim for intentional infliction of emotional distress, not constructive discharge. The allegations of constructive discharge are contained within Count III of the amended petition. The City never mentions the emotional distress claim, and it never contends that it is seeking coverage for an emotional distress claim. However, Illinois Union addresses the intentional infliction of emotional distress claim (and does not argue that it is precluded from coverage under a separate provision of the policy, even though it appears from the Court's review of the policy that it would be excluded as a "bodily injury"). Therefore, the Court assumes for purposes of this motion that the City is seeking coverage of this claim.

the prior and pending exclusion in the policy.  This exclusion precludes coverage for any claim "alleging, based upon, arising out of or attributable to any prior or pending litigation or administrative or regulatory proceeding filed on or before the effective date of the first policy . . . or the same or substantially the same wrongful act, fact, circumstance or situation underlying or alleged therein . . . ."  "[U]nder Missouri law, the phrase 'arising out of' is interpreted broadly, requiring only a 'simple causal relationship' as opposed to a proximate cause standard." First Bancshares, Inc. v. St. Paul Mercury Ins. Co., 2011 WL 4352551, *2 (W.D. Mo. Sept. 16, 2011) (citing Capitol Indem. Corp. v. 1405 Associates, 340 F.3d 547, 550 (8th Cir. 2003)).  Here, Wallingsford's claims of retaliation, constructive discharge and emotional distress "arise out of" her 2004 lawsuit and the prior administrative proceedings.  Wallingsford's amended petition alleges that she was retaliated against (including by being forced to resign) for complaining of discrimination.  The retaliation claim also specifically mentions that Wallingsford's suspension was an act of retaliation and refers to her prior allegations in Counts I and II of the amended petition as evidence of her protected activity and the City's retaliatory actions.  Wallingsford further alleges that "all of the improper and unlawful behavior of [the] City of Maplewood toward her as set forth herein, including without limitation the gender discrimination and gender bias, and the retaliatory nature of her wrongful suspension and constructive discharge, constitute the intentional infliction of emotional distress."

As the City concedes, Wallingsford's suspension, as well as the allegations in Counts I and II of the amended petition, were the subject of Wallingsford's 2003 Charge of discrimination

and her 2004 lawsuit.[6]  Wallingsford's 2006 claims of retaliation, constructive discharge, and intentional infliction of emotional distress are based upon and arise out the prior claims of discrimination because Wallingsford alleges that these prior facts form the basis of her current claims.

In addition, these prior allegations meet the definition of "wrongful acts" under the policy, so it can also be said that Wallingsford's 2006 claims arise from or are based upon "the same or substantially the same wrongful act, fact, circumstance or situation" that was at issue in the prior litigation and administrative proceedings.  As used in the policy, "wrongful acts" include "wrongful employment practice(s) committed or attempted by" the insured.  The policy defines "wrongful employment practice" as "any actual or alleged:"

    1. wrongful dismissal or discharge or termination of employment, whether actual or constructive;

    2. employment related misrepresentation;

    3. violation of any federal, state, or local laws (whether common or statutory) concerning employment or discrimination in employment;

    4. sexual harassment or other unlawful workplace harassment;

    5. wrongful deprivation of a career opportunity or failure to employ, promote or grant tenure;

    6. wrongful discipline of employees;

    7. negligent evaluation of employees;

    8. failure to adopt adequate workplace or employment policies and procedures; or

    9. employment related libel, slander, defamation or invasion of privacy.

---

[6]That some of these allegations were dismissed for failure to exhaust administrative remedies does not change the fact that they were still part of the prior litigation.

(emphasis supplied).  Wallingsford's claims for retaliation, constructive discharge, and intentional infliction of emotional distress arise from, and are based upon, the same or substantially the same prior "wrongful acts" because she cites them as elements of, and evidence in support of, her claims.  There is no dispute that Wallingsford's 2003 Charge of discrimination, the administrative investigation of those charges, and the subsequently filed 2004 lawsuit all arose before the inception date of the Illinois Union policy.  Because the City seeks coverage for claims arising out of prior litigation and administrative proceedings and these claims arise out of or are based upon the same or substantially related "wrongful acts" alleged in those prior proceedings, the prior and pending exclusion in the Illinois Union policy precludes coverage of the City's claims as a matter of law.  Accordingly, Illinois Union's motion for summary judgment will be granted.[7]

C. Columbia Casualty

Finally, Columbia Casualty moves for summary judgment on its claims made policy, contending that Wallingsford's claims against the City are not covered by the policy because they predate the policy and are specifically excluded from coverage.  As noted by the City, Columbia Casualty does not contend that it is entitled to summary judgment for failure to provide timely notice of the claim.  However, the Court's review of the undisputed evidence demonstrates that the City did not provide notice of Wallingsford's claims to Columbia until June 23, 2006, when it sent a copy of her 2006 lawsuit  to Columbia Casualty's third-party claims administrator.  Yet the policy period of Columbia's policy expired on July 1, 2004.  Therefore, it appears that

---

[7]Because this exclusion precludes coverage of the City's claims under this policy, I need not, and therefore do not, consider Illinois Union's alternate arguments in support of summary judgment.

Columbia Casualty may be entitled to summary judgment on the same ground that Northland's motion for summary judgment was granted – namely, that the City failed to provide timely notice of its claim under the claims made policy.

The City interprets Columbia's failure to raise this ground as a "tacit[] conce[ssion] that it suffered no prejudice from the City's failure to give Columbia notice of the 2004 lawsuit prior to its dismissal." However, the Court has specifically held in this Memorandum and Order that no demonstration of prejudice is necessary before summary judgment may properly issue to an insurer where an insured fails to provide timely notice of a claim within the reporting period of a claims made policy. This apparent discrepancy creates confusion in the record. Therefore, the Court will give the parties an opportunity to address this legal issue before the Court enters its ruling. Columbia Casualty shall file a supplemental memorandum of law in support of summary judgment that either moves for summary judgment on this additional ground or sets out its position with respect to this issue.[8] Plaintiff shall be given an opportunity to respond. **No reply brief shall be permitted absent leave of Court, which shall be granted only for good cause shown. These supplemental briefs shall only address the notice issue and shall not restate any prior arguments already made to the Court in the pending motion.**

Accordingly,

---

[8]To the extent plaintiff may argue that this additional briefing unduly amends the case management order or somehow unfairly prejudices it, I find that the interests of justice require limited briefing on this purely legal issue. Moreover, plaintiff will not be unduly prejudiced because it raised the issue in its opposition to summary judgment and this relatively short delay will not require the Court to move the trial date. The Court is giving plaintiff notice and opportunity to address this issue more fully (even though it first raised the issue) so that it cannot claim that it was unfairly surprised by the Court considering summary judgment on an issue not raised by the moving party.

**IT IS HEREBY ORDERED** that defendant Northland Casualty Company's motion for summary judgment [#37] is granted, and plaintiff's complaint against defendant Northland Casualty Company is dismissed with prejudice.

**IT IS FURTHER ORDERED** that defendant Illinois Union Insurance Company's motion for summary judgment [#30] is granted, and plaintiff's complaint against defendant Illinois Union Insurance Company is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Columbia Casualty Company shall file a supplemental memorandum in support of summary judgment and corrected exhibit as set out in footnote 1 in accordance with this Memorandum and Order by **July 17, 2012.**  Plaintiff shall file its supplemental memorandum in opposition to summary judgment in accordance with this Memorandum and Order by **July 24, 2012**.  No reply brief is permitted absent leave of Court, which shall be granted only for good cause shown.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 10th day of July, 2012.