UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITY OF MAPLEWOOD, MISSOURI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:11CV564 RWS |
| ) | |
| NORTHLAND CASUALTY CO., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Ellen Wallingsford, a police sergeant for the City of Maplewood, filed an employment discrimination charge in 2003 arising out of her alleged suspension. In 2004, Wallingsford sued Maplewood for gender discrimination based upon her suspension and other alleged discriminatory conduct. That lawsuit was dismissed on January 12, 2004. After she resigned, Wallingsford brought another lawsuit in 2006 against Maplewood in state court for constructive discharge, wrongful discharge, and retaliation. That case is still pending. During the relevant time periods, Maplewood had insurance coverage for employment discrimination claims from three different carriers, Northland, Columbia, and Illinois Union. All of these insurance policies are claims made or claims made and reported policies. When Maplewood notified the carriers of Wallingford's claims, all three insurance companies refused coverage. As a result, Maplewood filed the instant suit for breach of insurance contract against the carriers in state court. Defendants removed the case to this Court, citing diversity jurisdiction. See 28 U.S.C. § 1332.

On July 10, 2012, I granted summary judgment to defendants Northland and Illinois Union and ordered additional briefing on defendant Columbia's motion for summary judgment. In particular, I ordered the parties to address the issue of whether plaintiff's claim was precluded

as a matter of law because plaintiff failed to provide timely notice of its claim to Columbia. Columbia now argues that it is entitled to summary judgment on this ground as well as those advanced in its original motion. The City opposes summary judgment. Having thoroughly reviewed the record and all of the briefs in this case, I must grant summary judgment to Columbia for the reasons that follow.

Standards Governing Summary Judgment

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Fed.R.Civ.P. 56(c)(2)). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." Id. (internal quotation marks and citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000), (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come

forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted) .

"State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship." Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d 857, 861 (8th Cir. 2012). The parties agree that Missouri law governs all insurance contracts at issue in this case. Under Missouri law, the interpretation of the meaning of an insurance policy is a question of law. Capitol Indem. Corp. v. 1405 Associates, Inc., 340 F.3d 547, 547 (8th Cir. 2003). The general rules for interpretation of contracts apply to insurance policies. Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 301–02 (Mo. 1993) (en banc). "Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written." Krombach v. Mayflower Ins. Co., Ltd., 827 S.W.2d 208, 210 (Mo. 1 992) (en banc) (citations omitted). See also Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 209 (Mo. Ct. App. 1995) ("In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties."). An interpretation of insurance policy language which may render a portion of the policy illusory "should not be indulged in." Cano v. Travelers Ins. Co., 656 S.W.2d 266, 271 (Mo. 1983) (en banc).

"If the language is ambiguous, it will be construed against the insurer." Peters, 853 S.W.2d at 302 (internal citations omitted). "Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage." Nixon v.

Life Investors Ins. Co. of America, 675 S.W.2d 676, 679 (Mo. Ct. App. 1984). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." Peters, 853 S.W.2d at 302. Insurance policy language is ambiguous when it is reasonably open to different constructions. Lincoln County Ambulance Dist. v. Pacific Employers Ins. Co., 15 S.W.3d 739, 743 (Mo. Ct. App. 1998). To test whether the language used in the policy is ambiguous, the language is considered in the light in which it would normally be understood by the lay person who bought and paid for the policy. Kellar v. American Family Mut. Ins. Co., 987 S.W.2d 452, 455 (Mo. Ct. App. 1999). If an insurance "contract promises something at one point and takes it away at another there is an ambiguity." Behr v. Blue Cross Hosp. Service, Inc., of Mo., 715 S.W.2d 251, 256 (Mo. 1986) (en banc).

"Exceptions and limitations contained in insurance policies should be construed strictly against the insurer." Standard Artificial Limb, 895 S.W.2d at 209. When an insurance company seeks to escape coverage based on a policy exclusion, the burden is on the insurer to establish that the exclusion is applicable. American Family Mut. Ins. Co. v. Bramlett ex rel. Bramlett, 31 S.W.3d 1, 4 (Mo. Ct. App. 2000). "Unless an insurance contract is so clear in its meaning that as a matter of law it precludes a plaintiff's recovery, a motion for summary judgment based on the contract should be denied." Northland Ins. Cos. v. Russo, 929 S.W.2d 930, 934 (Mo. Ct. App. 1996).

Background Facts

Wallingsford was hired by the Maplewood police department in 1986. In March of 2003, Wallingsford sent a letter to the Maplewood City Manager complaining of work place harassment. On April 11, 2003, Wallingsford filed a Charge of Discrimination against the City

of Maplewood with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission.  The 2003 Charge alleged that police chief James White informed Wallingsford on December 18, 2002 that she was being suspended for failing to write up another officer for taking evidence for personal use.  In the Charge, Wallingsford alleged that she believed that she was actually suspended due to her gender and had therefore been subject to sex discrimination.  The EEOC issued a Notice of Charge to the City on April 17, 2003, providing the City with Wallingford's Charge of Discrimination.  On August 27, 2003, the MCHR issued a "no probable cause" determination to Wallingsford, and on October 15, 2003, the EEOC issued her a right to sue letter.  On January 12, 2004, Wallingsford filed a lawsuit against the City in this Court.  The 2004 suit, styled <u>Wallingsford v. City of Maplewood</u>, Case Number 4:04CV41, was assigned to United States Magistrate Judge Thomas C. Mummert, III.  On February 2, 2004, the City moved to strike some of Wallingsford's allegations in her complaint for failure to exhaust administrative remedies.  Wallingford's 2004 complaint included allegations that she was subjected to voice stress analyzer tests, poor employee evaluations, complaints of gender harassment by male officers when she wrote up these officers, being yelled at and treated abusively by male officers and supervisors, having her evaluation scores lowered if she complained, being passed over promotions, internal investigations without justification, being falsely accused of driving a police car while intoxicated and of removing evidence, being "intensively" watched, and being subjected to "other repeated and continuing behavior" by her supervisors because of her sex that makes it difficult to do her job.  Judge Mummert concluded that Wallingsford's 2003 Charge of Discrimination properly encompassed only her suspension and dismissed these allegations for failure to exhaust administrative remedies on May 12, 2004.

A few months later, Wallingsford filed a joint stipulation for voluntary dismissal without prejudice, and the 2004 lawsuit was dismissed on November 1, 2004. Wallingsford remained employed by Maplewood until she resigned, effective August 29, 2004.

Wallingsford filled out an EEOC Questionnaire on January 20, 2005 complaining of sex discrimination and retaliation by the City. Apparently, Wallingsford also filed a Charge of Discrimination, because the MCHR issued her a right to sue letter for the 2005 Charge on January 19, 2006. A copy of Wallingsford's 2005 EEOC Charge has not been provided to the Court. The City contends that it was never notified of Wallingsford's 2005 Charge and had no knowledge of the administrative proceedings until December of 2005, when it received a copy of the Dismissal and Notice of Rights sent to Wallingsford by the EEOC. Apparently, the City's copy of this letter included portions of Wallingsford's EEOC Questionnaire, but not the Charge of Discrimination. The City received a copy of Wallingsford's right to sue letter from the MCHR, but that does not indicate the nature of her claims. Wallingsford filed a second lawsuit against the City in the Circuit Court of St. Louis County on March 29, 2006. Wallingsford's state-court petition included some of the claims asserted against the City in her prior 2004 lawsuit. However, Wallingsford also brought claims for constructive discharge, retaliation and intentional infliction of severe emotional distress. Wallingsford filed a first amended petition on March 30, 2007. On December 23, 2011, the state court granted summary judgment to the City on Count I of the first amended petition and denied summary judgment on all other counts. Count I of the first amended petition alleges gender discrimination arising out of Wallingsford's

suspension.[1]  No Memorandum and Order explaining the basis for the state court's decision was provided to the Court.  The 2006 state court case is apparently still pending.[2]

## Discussion

Columbia Casualty issued its policy to the City for the period July 1, 2003 to July 1, 2004.  Page 1 of that policy states that "your insurance is written on a claims-made basis.  It provides coverage for claims **made against you occurring and reported during the policy period** shown on the declaration sheet." (emphasis supplied).  The policy states that Columbia "will pay those sums the insured becomes legally obligated to pay as 'damages' because of 'employment practices' to which this insurance applies."  Under the terms of the policy, the claim must be made during the policy or extended policy period.  A claim is deemed to have been made at the earlier of the following times: "1) When notice of such 'claim' is received and recorded by any insured or us, whichever comes first; 2) When notice of an incident or 'wrongful act' is first received by us before any resulting 'claim' is first made against any insured; or 3) When we make settlement in accordance with paragraph 1" of the Endorsement.

The Endorsement states that "All 'claims' arising out of an 'employment practice' to the same person, including 'damages' claimed by any person for care, loss of services or death resulting at any time, will be deemed have been at the time the first of such 'claims' is made, regardless of the number of 'claims' subsequently made."  The Endorsement further states that

---

[1]Count II contains the allegations that were struck from Wallingsford's 2004 case, and Counts III and IV also include allegations based on alleged wrongful acts, such as constructive discharge, that occurred after the filing of the 2004 suit.

[2]Although the parties notified the Court that the state court action was scheduled for trial on April 30, 2012, they did not advise the Court whether the case actually went to trial.

"[A]ll 'claims' for 'damages' based on or arising out of: (a) One 'employment practice'"; or (b) An interrelated series of 'employment practices' by one or more insureds shall be deemed to be one 'claim' and to have been made at the time the first of those 'claims' is made against any insured(s)." The Endorsement provides that the policy does not apply to any "claims" arising directly or indirectly from any:

> (1) 'Employment practice' which was the subject of any demand, suit or other proceeding which was initiated against any insured; or
>
> (2) Facts and circumstances which would cause a reasonable person to believe a 'claim' would be made and which were known to any Insured.
>
> prior to the effective date of the earlier of (i) the first coverage part of this type that we issued to you, of which this amendatory endorsement is an uninterrupted renewal, or (ii) this amendatory endorsement.

The policy defines "claim" several ways. According to the Endorsement, a "claim" is "a 'suit' or written demand for 'damages' arising out of a 'wrongful act' to which this insurance applies." It also defines "claim" as "a written notice presented by (1) any current or former 'employee,' 'leased worker,' or 'temporary worker,' or applicant for employment by you; or (2) the Equal Employment Opportunity Commission or any other federal, state or local administrative or regulatory agency on behalf of such person in item a. immediately preceding." "Claim" is also defined to include "any civil proceeding in which either 'damages' are alleged or fact finding will take place as a result of any 'employment practices' to which this insurance applies. This includes: . . . (3) any administrative proceedings established under applicable federal, state, or local laws as may be applicable to 'employment practices' covered under this insurance." Finally, the policy states that "claims" also include "an incident which might result

in a 'claim.'"  In such a case, the insured is obligated to "report such an incident to us as soon as you become aware of it" and include information such as dates, times, witnesses, and "what 'claim' you think might result."

The policy defines "damages" as "compensatory monetary amounts the insured is legally obligated to pay as judgments, awards, and settlements to which we have agreed in writing." Under the policy, "employment practices" means any of the following:

> a. wrongful refusal to employ a qualified applicant for employment;
>
> b. wrongful failure to promote a qualified insured person;
>
> c. wrongful demotion, negligent evaluation, negligent reassignment, or wrongful discharge;
>
> d. wrongful termination of employment, including retaliatory or constructive discharge;
>
> e. harassment, coercion, discrimination, or humiliation as a consequence of race, color, creed, national origin, marital status, medical conditions, gender, age, physical appearance, physical or mental impairments, pregnancy, sexual orientation, or sexual preference; or
>
> f. oral or written publication of material that slanders, defames, or libels an insured person or invades an insured person's right to privacy.

"Wrongful act" is defined as follows:

> [A]ny actual or alleged error or misstatement or act or omission or neglect or breach of duty, including misfeasance and nonfeasance, by the individual insureds in the discharge of their duties with the 'public entity,' individually or collectively, or in any matter to which this insurance applies claimed against them solely by reason of their being [or] having been duly elected or appointed officials.  'Wrongful act' includes allegations of malfeasance, but only if they are ultimately proven to be groundless.  This insurance does not apply to malfeasance if there is a final legal determination that such has taken place.

On June 23, 2006, Maplewood sent a copy of Wallingsford's 2006 lawsuit to Columbia Casualty's third-party claims administrator. Columbia Casualty denied coverage on August 4, 2006.

Columbia Casualty moves for summary judgment on the ground that Wallingsford's claim arose before the inception of the policy. The City concedes that the claims made in Wallingsford's 2003 charge, which were later brought in the 2004 suit, as well as the new claims in the 2006 lawsuit, are all outside the scope of the policy. However, the City contends that the "new" claims asserted in Wallingsford's 2004 lawsuit are covered by Columbia Casualty's policy because Judge Mummert concluded that these allegations were not related to Wallingsford's 2003 charge (and the claims that arose from them) and dismissed them. This argument fails.

The Columbia Casualty excludes "claims" arising directly or indirectly from any "facts and circumstances which would cause a reasonable person to believe a 'claim' would be made and which were known to any Insured" before the effective date of the policy. Here, the allegations from Wallingsford's complaint that the City insists are covered by the Columbia Casualty policy are allegations that she was subjected to voice stress analyzer tests, poor employee evaluations, complaints of gender harassment by male officers when she wrote up these officers, being yelled at and treated abusively by male officers and supervisors, having her evaluation scores lowered if she complained, being passed over promotions, internal investigations without justification, being falsely accused of driving a police car while intoxicated and of removing evidence, being "intensively" watched, and being subjected to "other repeated and continuing behavior" by her supervisors because of her sex that makes it difficult to do her job. While these allegations may not have appeared in her 2003 Charge of

Discrimination, they were all contained within the letter she sent to Maplewood's City Manager in March of 2003, well before the policy's inception date of July 1, 2003.  A complete copy of the letter appears in the file as docket entry #71.  The City does not deny that it received this letter before the inception of the Columbia Casualty policy period.[3]  The undisputed facts demonstrate that all of these "new" facts asserted in Wallingsford's 2004 lawsuit were known to the City before the effective date of the policy through this letter and would cause a reasonable person to believe a claim would be made.  Wallingsford claims that she has been the victim of "workplace harassment," refers to her letter as a "complaint," and states that she is taking "the next step" in reporting harassment by complaining to the City Manager as her supervisor's supervisor.  Wallingsford then goes on to detail numerous alleged instances of misconduct by her supervisors and co-workers.  Because Wallingsford's claim was reasonably foreseeable at the inception of the policy, the condition precedent (which precluded claims based on facts that the City knew about at the time it entered into the policy) was not met and the claim was not covered under the policy.  See City of Brentwood v. Northland Ins. Co., 397 F. Supp. 2d 1143, 1147 (8th Cir. 2005).  Columbia Casualty is therefore entitled to summary judgment.[4]

---

[3] Paragraph 18 of Columbia Casualty's statement of facts states that "in March 2003, Wallingsford prepared and delivered a letter to Martin Cocoran, Maplewood's City Manager, describing certain events which she claimed evidenced discrimination."  The City's response to this statement of fact is as follows: "Denied.  The referenced letter (which Columbia Casualty fails to attach) makes no mention of the word 'discrimination.'"  While the City may have denied Columbia Casualty's characterization of the letter as "evidencing discrimination," this response does not deny that the letter was received in March 2003.  See Fed. R. Civ. P. 56(e)(2) (where party fails to properly address assertion of fact, the court may "consider the fact undisputed for purposes of the motion.").

[4] Alternatively, there is no dispute that this is a claims-made policy, that the policy period expired in 2004, and that the City did not provide notice of Wallingsford's claims to Columbia Casualty until 2006.  Under Missouri law "a claims made policy provides coverage when the act

Accordingly,

**IT IS HEREBY ORDERED** that Columbia Casualty's motion for summary judgment [#51] is granted.

A separate Judgment in accordance with this Memorandum and Order and the

---

or omission is discovered and brought to the attention of the insurer, regardless of when the act or omission occurred." Wittner, Poger, Rosenblum & Spewak, P.C. v. Bar Plan Mut. Ins. Co., 969 S.W.2d 749, 754 (Mo. 1998) (en banc) (internal quotation marks omitted); accord Lexington Ins. Co. v. St. Louis University, 88 F.3d 632, 634 (8th Cir. 1996). "Claims made policies place special reliance on notice." Landry v. Intermed Ins. Co., 292 S.W.3d 352, 356 (Mo. Ct. App. 2009); thus, with a claims made policy, "if there is no timely notice, there is no coverage." Lexington Ins., 88 F.3d at 634 (noting that Missouri cases emphasize the necessity of this timely notice). Despite the undisputed facts, the City attempts to distinguish the Columbia Casualty policy from all other claims-made policies by arguing that it does not actually require notice of the claim to be given during the policy period. The City's argument is unavailing. The City can point to no cases where courts interpreting claims-made policies under Missouri law do not require notice to be given within the policy period, and the Columbia Casualty policy is no exception. To find otherwise would render the claims-made policy meaningless and transform it into an occurrence policy.

Nor do I find availing the City's argument that Columbia Casualty waived this argument by not asserting it sooner, as under Missouri law no insurance coverage arises under a claims-made policy if timely notice is not given, which is why courts do not require a showing of prejudice. "Because the reporting requirement helps define the scope of coverage under a claims made policy, to excuse a delay in notice beyond the policy period would alter a basic term of the insurance policy." Wittner, 969 S.W.2d at 754; see also, Landry, 292 S.W.3d at 356 ("If the insured does not give notice within the contractually required policy period, there is simply no coverage under a claims made policy, whether or not the insurer was prejudiced."). Here, there can be no waiver of policy provisions where no insurance coverage arises.

Finally, the City argues by incorporation that Columbia Casualty must first demonstrate prejudice from its failure to timely notify Columbia Casualty of Wallingsford's claim before it is entitled to summary judgment. I reject this argument for the same reasons I rejected it in connection with Northland's motion for summary judgment. Because the City did not provide notice of Wallingsford's claim within the reporting period of the claims made policy, Columbia Casualty is entitled to summary judgment on this alternative ground as well.

Memorandum and Order dated July 10, 2012 is entered this same date.

                                               _/s/ Rodney W. Sippel_
                                               RODNEY W. SIPPEL
                                               UNITED STATES DISTRICT JUDGE

Dated this 20th day of August, 2012.

- 13 -